STATE OF NORTH CAROLINA
v.
DUNCAN RAY BYNUM
No. COA08-72
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Catherine F. Jordan, for the State.
Bryan Gates, for defendant-appellant.
CALABRIA, Judge.
Duncan Ray Bynum ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of sexual battery. Defendant appeals the introduction of witness testimony regarding the consistency of statements made by the victim. We find no error.
At defendant's first trial in Mecklenburg County District Court the judge found him guilty of sexual battery and sentenced him to 150 days in the custody of the Sheriff. His sentence was suspended and he was placed on supervised probation for twenty-four months. As a special condition of probation, he was to serve thirty days in the custody of the Sheriff and comply with other special conditions for offenses involving the sexual abuse of a minor. Defendant appealed to Superior Court.
At trial in Superior Court, the State presented evidence that on 31 July 2006 the defendant, his six-year-old daughter, his girlfriend, and thirteen-year-old D.B. ("the victim") went to an amusement park. On the return trip from the amusement park, defendant took his girlfriend to work then drove to the hair salon where he worked. Defendant's daughter was asleep in the vehicle and remained there while defendant and D.B. went inside the hair salon.
D.B. testified at trial that defendant initiated a sexual conversation with her in the vehicle on the way to the salon. D.B. then testified that upon their arrival at the salon, defendant called her into a back room. When she got there, he pulled up her shirt, put his mouth on her breasts, pulled down her pants, and touched her "private part." No one else was in the salon at the time of the alleged sexual battery.
D.B. testified that she pulled up her pants and tried to call her mother, but was unsuccessful. Defendant gave D.B. ten dollars and told her he would add minutes to her cell phone if she restrained from telling anyone what happened. Later that day, the victim told her family what happened, and her family contacted the Charlotte-Mecklenburg Police Department.
Other witnesses included D.B.'s mother, the mother of defendant's daughter, a social worker, and two police officers who responded to the 911 call, but none of them had direct knowledge of what had occurred in the salon. One of the officers took a statement from D.B. that was later redacted and admitted for the purpose of corroborating D.B.'s testimony.
Alita Dunbar, a detective with the Charlotte-Mecklenburg Police Department ("Detective Dunbar") testified that she interviewed D.B. a week after the salon incident had occurred. The prosecutor asked Detective Dunbar to explain her procedure for interviewing young witnesses. The following exchange took place between the prosecutor and Detective Dunbar:
Q: And what are the things that you look for when you're interviewing a child witness or victim?
A: Typically I'll look for consistencies. I'll see  I'll ask her to go over the incident that occurred again, and see if it's consistent with what she originally told the officer at the scene and make sure there's no discrepancies. So I look at that for accuracy but that's typically what we look for to see if they're credible.
Later in Detective Dunbar's testimony:
Q: And in your opinion how did [her statement] compare to the statement that she gave Officer Posey?
A: She was very accurate, she was very consistent in what she told me. It was all there's nothing she left out, so I found her to be credible.
The jury returned a verdict finding the defendant guilty of sexual battery. Defendant was sentenced to 150 days in the North Carolina Department of Correction. Defendant appeals.
On appeal, defendant argues the errors at trial included prosecutorial misconduct by the prosecutor regarding the questions he asked Detective Dunbar, plain error by the court allowing Detective Dunbar to testify as to the investigative procedure, and ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's questions. Specifically, the defendant argues that Detective Dunbar gave an opinion on the credibility of another witness in the trial contrary to the North Carolina Rules of Evidence. We disagree.
The North Carolina Supreme Court has held that testimony by law enforcement officers concerning the consistency of a victim's statements is admissible lay opinion testimony under N.C. Gen. Stat. § 8C-1, Rule 701. State v. Rhinehart, 322 N.C. 53, 366 S.E.2d 429 (1988). This Court has previously held it proper for law enforcement to provide testimony concerning their investigative procedure. State v. O'Hanlan, 153 N.C. App. 546, 562, 570 S.E.2d 751, 761 (2002).
In Rhinehart, two law enforcement officers testified that a child victim of a sexual assault had provided consistent information to each officer regarding his assault. On appeal, the defendant argued that it was error to allow the officers toprovide lay opinions to establish that the victim's statements to each of the officers were consistent. Our Supreme Court held that this testimony was "helpful to the determination of a fact in issue  namely, the precise nature of the sexual offense perpetrated by defendant." Rhinehart, 322 N.C. at 57, 366 S.E.2d at 431.
In O'Hanlan, a law enforcement officer testified that he had not extensively investigated some physical evidence because the victim of the sexual assault was able to positively identify her attacker. On appeal to this Court, the defendant argued that the officer's testimony constituted expert testimony that served to bolster the credibility of the complaining witness. This Court disagreed. The Court held that the officer was not offering his opinion that the victim had, in fact, been assaulted, but was explaining why he had not pursued more scientific testing of the physical evidence. The Court held that the officer's testimony was "helpful to the fact-finder in presenting a clear understanding of his investigative process." O'Hanlan, 153 N.C. App. at 563, 570 S.E.2d at 762.
Detective Dunbar's testimony regarding the consistency of the information provided by the victim is similar to Rhinehart and O'Hanlan. Detective Dunbar did not offer her opinion to prove that the victim had been sexually assaulted, or to vouch for her credibility when she took the stand during the trial. The purpose of her testimony was to explain why, after interviewing the victim, they proceeded to investigate the allegations made by the victim. Since the testimony explains the investigative procedure used in this case, Detective Dunbar's testimony was properly admitted under N.C. Gen. Stat. § 8C-1, Rule 701 (2007) as helpful to the fact-finder in determining a fact in issue.
Since we find that the testimony by Detective Dunbar was properly admitted by the trial court, we necessarily find that the prosecutor did not commit misconduct in the line of questioning and the defense attorney did not provide ineffective assistance of counsel in failing to object to the questioning or testimony.
No error.
Judges TYSON and ELMORE concur.
Report per Rule 30(e).